IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
RAMAR MORGAN                    :   CIVIL ACTION
                                :
        Plaintiff              :
                                :
     vs.                        :
                                :
CORRECTIONAL OFFICERS GIFFORD,  :   NO. 13-CV-1252
WOOD, STEBBINS, CRAWFORD,       :
UNKNOWN CORRECTIONAL OFFICER #1,:
DELAWARE COUNTY BOARD OF PRISON :
INSPECTORS, and COMMUNITY       :
EDUCATION CENTERS               :
                                :
        Defendants             :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                              **October 7, 2014**

    This Section 1983 action has been brought before the Court
on Motion of the remaining Defendants[1] for Summary Judgment.  For
the reasons which follow, the motion shall be granted in part and
denied in part.

### Factual Background

    According to the Amended Complaint, this action arose on
March 13, 2011 in the cell which Plaintiff, Ramar Morgan, was
then occupying in the Special Management Unit ("SMU") at George

---

    [1]  Previously, we ordered the dismissal of Corrections Officer Wood for
failure to effectuate service of process and George W. Hill Correctional
Facility insofar as it is not a legal entity subject to suit under §1983.
Hence, the within motion has been filed on behalf of Defendants Community
Education Centers, the Delaware County Board of Prison Inspectors ("DCBPI")
and Corrections Officers Gifford, Stebbins and Crawford.

W. Hill Correctional Facility ("GWHCF") in Delaware County,
Pennsylvania.  Plaintiff alleges that on that date and while he
was handcuffed backwards to the door of his cell, Defendants
Gifford, Stebbins and Crawford entered his cell, along with two
other corrections officers and, after referring to an incident
from the preceding day in which Plaintiff purportedly did not
cooperate with another corrections officer who was strip-
searching him, told him to pick one of them to give him "ten body
shots."  (Am. Compl., ¶18).  When Plaintiff responded that he was
"not picking anyone to assault" him, Defendant Gifford allegedly
shouted "well, no[w] you'll have to pick one of us to give you
twenty body shots."  (Id.)  When Plaintiff again said that he was
not going to pick anyone to assault him, Defendant Gifford
"without warning or justification" dropped his water bottle and
hit Plaintiff fifteen times in his chest while he was still
handcuffed to the cell door. Plaintiff further alleges that
Gifford then, again without "warning or justification,"
handcuffed him to his bed in a prone position and kicked him
repeatedly in the back while Defendants Wood, Stebbins and
Crawford either held him down or did nothing to intervene and
stop the assault.  (Am. Compl., ¶s 18-19).

Plaintiff avers that he was left handcuffed to the bed for
20 minutes before he was uncuffed and then had to wait five
hours, until the next correctional officer shift change, to be

transported to the prison infirmary for medical assistance.  As a result of this incident, Plaintiff claims that he sustained a broken rib, contusions to his face and body and emotional distress.  (Am. Compl., ¶s 20-22).

By way of his Amended Complaint and pursuant to 42 U.S.C. §1983 and Pennsylvania state law, Plaintiff contends that Defendants violated his right to be free from excessive force under the Fourth and Fourteenth Amendments, assaulted, conspired against and intentionally inflicted emotional distress upon him. He seeks monetary compensation for his physical and emotional injuries and the recovery of his attorney's fees and costs pursuant to 42 U.S.C. §1988.

Defendants, for their part, now contend that judgment is properly entered in their favor as a matter of law on all of plaintiff's claims for the reason that he has no evidence aside from his own uncorroborated testimony to sustain his claims.[2]

### Standards Governing Summary Judgment Motions

Under Fed. R. Civ. P. 56(a), which outlines the standards to be employed by the federal courts in considering motions for summary judgment:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense

---

[2]  Although Plaintiff has filed nothing in opposition to this motion despite having had an extension of time until July 30, 2014 to do so, we nevertheless are constrained to review the record in his favor and consider the merits of his claims.  See, e.g., Fed. R. Civ. P. 56; Local Rule of Civil Procedure 7.1(c).

> - on which summary judgment is sought.  The court shall
> grant summary judgment if the movant shows that there
> is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law...

In reviewing the record before it for purposes of assessing the propriety of entering summary judgment, the court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Ma v. Westinghouse Electric Co., No. 13-2433, 2014 U.S. App. LEXIS 5049, *9 (March 18, 2014); Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013).  The initial burden is on the party seeking summary judgment to point to the evidence "which it believes demonstrate the absence of a genuine issue of material fact." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).  At the summary judgment stage of proceedings, courts do not "weigh the evidence or make credibility determinations," as those are jury functions and not those of a judge.  Murphy v. Radnor Township, No. 12-4202, 542 Fed. Appx. 173, 176, 2013 U.S. App. LEXIS 21529 at *6 (3d Cir. Oct. 23, 2013)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455

4

F.3d 418, 423 (3d Cir. 2006)(citing Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. 2505).

However, to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant. Jakimas v. Hoffman-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir. 2007). Conclusory statements and general denials will not suffice, nor can the non-movant simply reassert factually unsupported allegations contained in the pleadings. Williams v. West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Franklin County Area Development Corp. v. Leos, 462 B.R. 151, 154 (Bankr. M.D. Pa. 2011); Luther v. Kia Motors America, Inc., 676 F. Supp. 2d 408, 415 (W.D. Pa. 2009). And, "if there is a chance that a reasonable juror would not accept a moving party's necessary propositions of fact," summary judgment is inappropriate." Burton, supra, (quoting El v. SEPTA, 479 F. 3d 232, 238 (3d Cir. 2007)).

## Discussion

*A. Count I - §1983 Excessive Force Claim Against Defendant Corrections Officers Gifford, Stebbins and Crawford*

As noted, Plaintiff has invoked 42 U.S.C. §1983 as the basis for relief in this action. That section, entitled "Civil action for deprivation of rights," states the following in relevant part:

Every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. ...

42 U.S.C. §1983.   Section 1983 is thus not itself a source of substantive rights but a method for vindicating federal rights elsewhere conferred by the United States Constitution and federal statutes.   Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811-812, 127 L. Ed. 2d 114 (1992); Baker v. McCollan, 443 U.S. 137, 146, n. 3, 99 S. Ct. 2689, 2694-2695, n. 3, 61 L. Ed. 2d 433 (1979).   It therefore does not provide redress for common law torts - the plaintiff must allege a violation of a federal right and that the person who has deprived him of that right acted under color of state or territorial law.   Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980); Halsey v. Pfeiffer, 750 F.3d 273, 290 (3d Cir. 2014); Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).

"In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989).   In most instances, that will be either the

Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct.  The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."  Id.

However, a §1983 plaintiff who is subjected to excessive force after arrest but before conviction and who is lawfully committed to pretrial detention is a pre-trial detainee.  Bell v. Wolfish, 441 U.S. 520, 535-536, 99 S. Ct. 1861, 1872, 60 L. Ed.2d 447 (1979); Anton v. Guarini, Civ. A. No. 09-2899, 2010 U.S. Dist. LEXIS 136198 at *11 (E.D. Pa. Dec. 22, 2010).  "Pre-trial detainees rely on neither the Fourth Amendment nor the Eighth Amendment; instead, they are protected under the Due Process Clause of the Fourteenth Amendment."  Guarini, supra, (citing, inter alia, Wolfish, 441 U.S. at 536; Hill v. Algor, 85 F. Supp. 2d 391 (D. N.J. 2000); Bieros v. Nicola, 860 F. Supp. 226, 230 (E.D. Pa. 1994)).  This distinction is significant because, while the Due Process Clause prohibits any form of punishment, the Eighth Amendment only prohibits punishment that is "cruel and unusual," i.e. punishment imposed "maliciously and sadistically to cause harm."  Jackson v. Phelps, No. 13-4468, 2014 U.S. App. LEXIS 15225 at *8, *10 (3d Cir. July 8, 2014)(citing, inter alia,

Hudson v. McMillan, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) and Bell v. Wolfish, 441 U.S. at 535).[3]  Through it all, the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner and, where a pretrial detainee's excessive force claim arises in the context of a prison disturbance, it is the Eighth Amendment cruel and unusual punishment standard[4] which

---

[3]  Hence, in the case of someone such as Plaintiff who is detained in a county facility, the Due Process Clause of the Fourteenth Amendment, which provides that no state "shall deprive any person of life, liberty or property, without due process of law...," applies.  That the Eighth Amendment is made applicable to the states as well through the Fourteenth Amendment is well-established.  See, e.g., Robinson v. California, 370 U.S. 660, 675, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962).

[4]  As stated by our colleague Judge Stengel in Anton, supra,

In an Eighth Amendment excessive force claim, the key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(citing Hudson, 503 U.S. 1 at 7, 112 S. Ct. 995, 117 L. Ed. 2d 153).  "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Id. (citing Whitley [v. Albers, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)]).

This analysis differs somewhat from that utilized to assess the constitutionality of the application of force under the Fourth Amendment's prohibition against unreasonable seizures of the person.  Indeed, under a Fourth Amendment analysis, "the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." Graham v. Connor, 490 U.S. at 395, 109 S. Ct. at 1871 (quoting Tennessee v. Garner, 471 U.S. 1, 7-8, 105 S. Ct. 1694, 1699-1700, 85 L. Ed.2d 1 (1985)(emphasis in original).  In so far as "'the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., 490 U.S. at 396, 109 S. Ct. At 1872 (quoting Wolfish, 441 U. S. At 559, 99 S. Ct. at 1884).  Thus, applying this

applies.  Everett v. Nort, No. 13-1864, 547 Fed. Appx. 117, 121,
2013 U.S. App. LEXIS 23451 at *9 (3d Cir. Nov. 21, 2013);
Williams v. Fields, No. 11-3646, 535 Fed. Appx. 205, 209, n.4,
2013 U.S. App. LEXIS 17679 at *10, n.4 (3d Cir. Aug. 23,
2013)(quoting Boring v. Kozakiewicz, 833 F.3d 468, 471 (3d Cir.
1987)); Bistrian v. Levi, 696 F.3d 352, 374 (3d Cir. 2012);
Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).
Whether force constitutes "punishment" depends on whether it is
"rationally related to a legitimate nonpunitive governmental
purpose" and whether it "appears excessive in relation to that
purpose." Jackson, 2014 U.S. App. at 10 (quoting Wolfish, 441
U.S. at 561).  "Absent proof of intent to punish ... this
determination generally will turn on whether an alternative
purpose to which the restriction may rationally be connected is
assignable for it, and whether it appears excessive in relation
to the alternative purpose assigned to it."  Id, (quoting Block
v. Rutherford, 468 U.S. 576, 584, 104 S. Ct. 3227, 82 L. Ed. 2d
438 (1984).  Moreover, it is the force, rather than the injury
which is the relevant inquiry for excessive force claims and thus
the Constitution is violated "when prison officials maliciously
and sadistically use force to cause harm, regardless of "whether
or not significant injury is evident." Williams v. Fields, 535

---

reasonableness principle, "[n]ot every push or shove, even if it may later
seem unnecessary in the peace of a judge's chambers, violates the Fourth
Amendment."  Id., (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.
1973)).

Fed. Appx. at 209-210.

In this case Plaintiff testified that, sometime between 4:30 and 5:00 p.m. on March 13, 2011, four Corrections Officers – Sgts. Stebbins, Wood, Gifford and CO Crawford, were conducting cell searches when they came to his cell on the SMU[5] - No. 106 and told him to stand up and put his hands through the slot on the door.  Plaintiff stated that he did as he was directed and was handcuffed behind his back.  He was then told to step to the back of the cell and Gifford, followed by Stebbins, Wood and then Crawford, who stood at the door, entered the cell.  (Deposition of Ramar Morgan, 12/18/13, pp. 14-15).  Sgt. Gifford, who was standing right next to Plaintiff, said "Now, you know that CO that you had to squat and cuff twice for last night was a very good friend of mine.  Now since you want to be like that pick one of us to give you ten body shots." (Morgan Dep., p. 16).  Plaintiff testified that he replied "I'm not picking anyone to assault me or to hit me."  At that point according to Plaintiff, a fifth, unknown corrections officer approached the door and Defendant Gifford said "Well, now there is five of us.  Pick one of us to give you ten body shots."  Plaintiff again said that he was not picking anyone to assault him in response to which Gifford "automatically drops the water, takes his left hand,"

_____

[5]   "SMU" is an acronym for "Special Management Unit," (Ryan Gifford Deposition, 2/26/14, p. 45; Jeffrey Stebbins Deposition, p. 17).

grabbed Plaintiff "right a little bit in from my back right
shoulder," held him and started "whaling, punching [him] in the
middle of [his] chest as hard as he can." (Morgan Dep., p. 17).
According to Plaintiff, he could "count the times he probably
punched me, estimate of maybe 15 to 20 times in the middle of my
chest constantly." (Morgan Dep., 17-18).

    While this was going on, all the other officers were
standing there. Plaintiff further testified:

> Next proceeds for Gifford to unhandcuff me and push me over
> on the bunk. In SMU we have no top and bottom bunk. It's
> only one bottom bunk. I had no mattress from the day before
> when I was assigned to SMU so I'm pushed over on a plain
> piece of steel. As I'm pushed over on the bed he
> unhandcuffs me. Handcuffs my right arm to the arm leg of
> the bunk. He handcuffed me to the skinny bar at the leg of
> the bunk. As I'm being held down one hand - I believe it
> was his left. I can't say because I"m not looking back, but
> either left or right hand is pressed on me and he jumps up
> with his knee pads with his CERT uniform with his CERT
> materials on, meaning the knee pads that he had on. He
> jumps in the middle of my back, knees me in my back. Does
> it three times, knees me in my back. After kneeing me in my
> back, which proceeds to crack my right rib because I'm
> laying over a metal bunk just like this table. I'm laying
> over a metal bunk, handcuffed one arm to the leg of the
> bunk. So, my upper body is across the bunk, meaning my
> belly, this part of my belly, is on the ledge of the bed,
> which sticks up for a mattress to lay in the bunk. I'm laid
> across that and he proceeds to jump on my back with his
> knees. Three times hits me in my knees. That's when I feel
> it crush in. Then he proceeds to push me in the back of my
> head. He hit me in the back of my head with his fist
> approximately maybe about five to six times before I heard a
> voice in the crowd, which I'm not sure of out of the four
> said, Uh uh, uh uh, that's enough."

(Morgan Dep., 19-20). Mr. Morgan testified that the officers
left him in his cell on his knees, handcuffed to the bed frame

while they closed his cell door and stood outside talking and
laughing for "about two minutes."  Defendant Stebbins then came
back and unhandcuffed him but did not answer Plaintiff when he
asked to go to the medical unit.  (Morgan Dep., 21-22).
Plaintiff stated that he was taken to the prison infirmary
between midnight and 1 a.m. on March 14th.  (Morgan Dep., 24).

Plaintiff is the only person to testify to this version of
events.  Neither Defendant Stebbins nor Defendant Gifford has any
recollection of anything other than a routine shakedown[6] of
Plaintiff's cell, along with all of the other cells in SMU.
Gifford recalls only that Plaintiff was unhappy that there was
going to be a shakedown every day on two different shifts and
that his response to that was that "this was part of this unit,
when you're on the Special Housing Unit and that was it."
Gifford denied using any force whatsoever upon Plaintiff and
Stebbins testified that he did not see either Officers Gifford or
Wood assault Plaintiff while he was housed in the SMU on either
March 12th, 13th or 14th of 2011.  (Gifford Dep., 46-48; Stebbins
Dep., 30-31).

Clearly then, we are here presented with a "he said, she
said" scenario such that we are compelled to closely examine any

---

[6]  A "shakedown" is a search of an inmate's cell and through his or her
personal effects for contraband.  (Morgan Dep., 22).  At or around the time of
this incident, the prison staff at GWHCF was conducting shakedowns of all of
the cells in the SMU at the beginning of the first and second shifts each day.
(Gifford Dep., 33-35).

corroborative evidence which may exist.  Indeed, as the Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

Here, the record does contain a GWHCF "Use of Force Employee/Inmate Injury Report" dated March 14, 2011 which was apparently made at 1 a.m. and signed by one "Gene A. Rodgers, RN," who is presumably the Registered Nurse who was on Duty in the infirmary at that time.  According to this report, Plaintiff claimed "to have been assaulted."  Although no assailant was identified on the report, the Plaintiff was found to have superficial scratches and scrapes on his chest and scratches and bruising on his back below the shoulder in the area of his right arm.  (Injury Report of 3/14/11, Exhibit "D").  In addition, the shift roster for March 13, 2011 (which is attached to Defendants' Motion for Summary Judgment as Exhibit "I") verifies that Defendants Stebbins, Wood and Gifford were all working on the second shift that day and, as reflected by the Incident Report attached as Exhibit "J," a shakedown of the SMU took place at approximately 4:30 p.m.  Likewise, both Defendants Stebbins and Gifford testified that they conducted a shakedown of the

13

plaintiff's cell during second shift on March 13, 2011 although both deny that Plaintiff was assaulted. (Stebbins Dep., 50-52; Gifford Dep., 33-34, 44, 46-48).

Finally, the record also includes a radiology report of an x-ray of Plaintiff's ribs which was performed at GWHCF on April 11, 2011 and a copy of an "Inmate/Resident Grievance Form" which Plaintiff submitted to GWHCF Grievance Coordinator E. Asante in which he asks why he hasn't been seen by an investigator yet for having been assaulted on March, 2011 by Sgts. Gifford and Wood and three other corrections officers while being housed in Cell 106 on the SMU. (Exhibit "L").

Thus, while there is scant corroborative evidence against Defendants Gifford and Stebbins, there is nothing to suggest that Defendant Crawford was present or had any involvement in the alleged incident at issue here. So saying, summary judgment shall be granted in favor of Defendant Crawford and against Plaintiff as a matter of law on all of Plaintiff's claims against him.

As to Defendants Stebbins and Gifford, however, we find that the record contains minimal, albeit sufficient, corroborative evidence to suggest that Plaintiff's version of events could be true if believed. In so holding, we find that it is eminently reasonable and in keeping with such appropriate prison objectives as ensuring security and inmate and guard safety to require SMU

14

prisoners to undergo cell shakedowns twice a day and to require that such prisoners be handcuffed in advance of corrections officers entering their cells to conduct such shakedowns.  That having been said, however, we can discern no legitimate nonpunitive governmental purpose behind punching a handcuffed pretrial detainee some 15 times in the chest followed by handcuffing him facedown on a bed frame, jumping on his back and striking him on the back and head.  Accordingly, we conclude that Plaintiff's §1983 claim against Defendants Gifford and Stebbins warrants submission to a jury.

   *B.  Counts II and IV - Common Law Claims for Assault & Battery and Intentional Infliction of Emotional Distress*

   Based upon the same alleged sequence of events, Plaintiff also seeks damages under the Pennsylvania common law theories of assault and battery and intentional infliction of emotional distress.

   Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree upon the person." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994)(quoting Cohen v. Lit Brothers, 166 Pa. Super. 206, 209, 70 A.2d 419, 421 (1950); Bellmon v. City of Philadelphia, 895 F. Supp. 2d 659, 667 (E. D. Pa. 2012).  Although the Pennsylvania

15

Supreme Court has never expressly recognized a cause of action for intentional infliction of emotional distress and thus has never formally adopted *Restatement (Second) of Torts*, §46, it has cited the section as setting forth the minimum elements necessary to sustain such a cause of action.  <u>Taylor v. Albert Einstein Medical Center</u>, 562 Pa. 176, 181, 754 A.2d 650, 652 (2000). Given this implicit recognition of the tort, we consider that under §46,

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

>> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

>> (b) to any other person who is present at the time, if such distress results in bodily harm.

"Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have presented only the most egregious conduct," that is, "the conduct must be so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Hoy v. Angelone</u>, 554 Pa. 134, 151, 720 A.2d 745, 754 (quoting <u>Buczek v. First National Bank of Mifflintown</u>, 366 Pa. Super. 551,

16

558, 531 A.2d 1122, 1125 (1987)).  And, in the event that this threshold is satisfied, it remains incumbent upon a plaintiff seeking relief for this tort to provide some objective proof that he has in fact sustained severe emotional injury by presenting competent medical evidence to this effect.  <u>Kazatsky v. King David Memorial Park</u>, 515 Pa. 183, 198, 527 A.2d 988, 995 (1987).

In application of the foregoing, we reiterate that there is absolutely no evidence whatsoever that either Officer Crawford or Officer Stebbins assaulted or even touched Plaintiff.  Indeed, Plaintiff has testified that it was Officer Gifford and only Officer Gifford who assaulted him.  (Morgan Dep., p. 32).  Consequently, summary judgment is properly entered in favor of both C.O. Stebbins and C.O. Crawford on both Counts II and IV.[7]

We are likewise compelled to also enter judgment in favor of C.O. Gifford on Plaintiff's claim for intentional infliction of emotional distress.  Indeed, in reviewing the record in this matter, Plaintiff has produced absolutely no evidence with respect to the damages which he claims to have suffered and particularly no competent medical evidence to prove that he did sustain emotional injury as a result of having been purportedly assaulted by Defendant Gifford.  Inasmuch as there is a material issue of fact as to whether the assault took place, we deny

---

[7]  We reiterate that there is also no corroborating evidence that Officer Crawford was on duty at the time of Plaintiff's alleged assault.  Summary judgment is therefore properly entered in favor of C.O. Crawford on this basis as well as to Counts II and IV of the Amended Complaint.

Defendant Gifford's motion for summary judgment as to Count II.

   *C.  Count III - Plaintiff's Claims Against Defendants CEC and Delaware County Board of Prison Inspectors for Failure to Train and Supervise*

   In Count III of his Amended Complaint, Plaintiff seeks to hold Defendants DCBPI and CEC liable for his alleged assault on the grounds that they "as a matter of policy and practice failed to discipline, train, or otherwise sanction correctional officers who violate the rights of prisoners, ... thus encouraging defendants Gifford, Wood, Stebbins and Crawford in this case to engage in the unlawful and actionable conduct described above." (Am. Compl., ¶31).

   Under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a city, municipality or private entity that is a state actor "may not be held vicariously liable under §1983 for the actions of its agents" because "there is no *respondeat superior* theory of municipal liability."  Regan v. Upper Darby Township, No. 09-2049, 363 Fed. Appx. 917, 922, 2010 U.S. App. LEXIS 1287 (3d Cir. Jan. 10, 2010)(quoting Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006)).  In other words, such actors cannot be held liable *solely* because they employ a tort-feasor.  Monell, supra. Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

18

the injury that the government as an entity is responsible under §1983." Id., 436 U.S. at 691, 694, 98 S. Ct. at 2036, 2037-2038. Thus, CEC and DCBPI can only be liable for any constitutional deprivation suffered by Plaintiff "if there is a direct causal link between a policy or custom and the alleged constitutional deprivation. Regan, 363 Fed. Appx. at 922-923. And, while inadequacy of police training may serve as the basis for liability under §1983, it is only when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact, that liability may be imposed. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed.2d 412 (1989).

It should be noted that a direct causal link can be shown in two ways. Regan, at 923. First, "a body [such as CEC and/or DCBPI] may be sued directly if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." Id, (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). Second, the requisite causal link may be shown even though it has not received formal approval through the body's official decisionmaking channels, when "such practices of state officials are so permanent and well settled that they operate as law." Id, (quoting Monell, 436 U.S. at 690 and Jiminez v. All Am.

19

Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007).

Here again, Plaintiff fails to provide any evidence whatsoever in support of his contention that his alleged constitutional deprivation was the result of any either formally enacted or informally recognized custom, policy or practice on the part of the DCBPI or CEC nor has he mustered any evidence as to how the training of the corrections officer at issue here was deficient or how it could have been better.  Accordingly, judgment is properly entered in favor of these institutional, state actor defendants on Count III of the Amended Complaint as a matter of law as well.

       *D.  Count IV – Conspiracy to Violate Civil Rights*

In Count IV of his Amended Complaint, Plaintiff pleads what is presumably a cause of action against all of the defendants under 42 U.S.C. §1985 for their alleged conspiracy to deprive him of his federal and state civil rights.

Section 1985 consists of three subsections and Plaintiff does not specify which subsection he is invoking in Count IV.  It appears, however, that only the subsection (3), entitled "Depriving persons of rights or privileges," arguably has any application here.  Under that subsection,

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing

or hindering the constituted authorities of any State or
Territory from giving or securing to all persons within such
State or Territory the equal protection of the laws; or if
two or more persons conspire to prevent by force,
intimidation, or threat, any citizen who is lawfully
entitled to vote, from giving his support or advocacy in a
legal manner, toward or in favor of the election of any
lawfully qualified person as an elector for President and
Vice-President, or as a member of Congress of the United
States; or to injure any citizen in person or property on
account of such support or advocacy ; in any case of
conspiracy set forth in this section, if one or more persons
engaged therein do, or cause to be done, any act in
furtherance of the object of such conspiracy, whereby
another is injured in his person or property, or deprived of
having and exercising any right or privilege of a citizen of
the United States, the party so injured or deprived may have
an action for the recovery of damages, occasioned by such
injury or deprivation, against any one or more of the
conspirators.

To state a claim under §1985(3), a plaintiff must allege:

(1) a conspiracy; (2) for the purpose of depriving, either

directly or indirectly, any person or class of persons of the

equal protection of the laws, or of equal privileges and

immunities under the laws; (3) an act in furtherance of the

conspiracy; (4) whereby a person is either injured in his person

or property or deprived of any right or privilege of a citizen of

the United States.  United Brotherhood of Carpenters & Joiners v.

Scott, 463 U.S. 825, 828-829, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d

1049 (1983); Slater v. Susquehanna County, No. 11-1726, 465 Fed.

Appx. 132, 136, 2012 U.S. App. LEXIS 406 (3d cir. Jan. 9, 2012).

Supreme Court precedent further establishes that "in order to

prove a private conspiracy in violation of §1985(3), a plaintiff

must also show that (1) some racial or perhaps otherwise class-

based, invidiously discriminatory animus lay behind the conspirators' action and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official encroachment." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-268, 113 S. Ct. 753, 758, 122 L. Ed. 2d 34 (1993)(quoting Carpenters v. Scott, 463 U.S. at 233, and Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)). *In accord*, Farber v. City of Patterson, 440 F. 3d 131, 134 (3d Cir. 2006).

On this claim too, Plaintiff has produced not even a scintilla of evidence of any of the elements necessary to sustain a claim under §1985(3).  Accordingly, summary judgment is hereby granted in favor of all of the movants on Count IV of the Amended Complaint as well.

For all of the above-stated reasons, Defendants' motion for summary judgment is granted in large part and denied in part pursuant to the attached order.

22